appeal from an order refusing confirmation of a report of commissioners of estimate, and no reason suggests itself why this is not conclusive upon the question here presented.

The appeal should be dismissed, with $10 costs and disbursements.

HIRSCHBERG, BURR, and RICH, JJ., concur. JENKS, P. J., taking no part.

---

### REID v. LONG ISLAND R. CO. et al.

(Supreme Court, Appellate Division, Second Department.   April 21, 1911.)

1. APPEAL AND ERROR (§ 927*)—REVIEW—NONSUIT.

On plaintiff's appeal from a judgment of nonsuit. the view of the evidence most favorable to him which the jury could have taken must be taken.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3748; Dec. Dig. § 927.*]

2. RAILROADS (§ 297*)—CROSSING ACCIDENT—JURY QUESTION—NEGLIGENCE.

In a street car passenger's action against the street car company and a railroad company for injuries by collision of the car with a railroad train, evidence *held* to make it a jury question whether due care was exercised by the railroad employés.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 297.*]

3. NEGLIGENCE (§ 92*)—IMPUTED NEGLIGENCE.

Negligence of the conductor and motorman of a trolley car in crossing a railroad crossing cannot be imputed to a passenger.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 142–146; Dec. Dig. § 92.*]

4. RAILROADS (§ 288*)—CROSSING ACCIDENT—CONCURRING NEGLIGENCE OF THIRD PARTY.

A street car passenger is entitled to recover against the railroad company for injuries sustained in a collision at a railroad crossing by the joint negligence of the street car company and railroad company.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 288.*]

5. RAILROADS (§ 297*)—CROSSING ACCIDENT—SUFFICIENCY OF EVIDENCE.

In a street car passenger's action against a railroad company for injuries to a passenger by collision of the car with a railroad train, evidence *held* not to show the sounding of a whistle on approaching the crossing.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 297.*]

Appeal from Trial Term, Kings County.

Action by Alexander F. Reid, as administrator of Russell A. Reid, deceased, against the Long Island Railroad Company and another. From a judgment dismissing the complaint, plaintiff appeals. Reversed, and new trial granted.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and WOODWARD, JJ.

Robert H. Ernest, for appellant.
William C. Beecher, for respondent.

WOODWARD, J. [1] The plaintiff having been nonsuited, is, of course, entitled to the most favorable view of the evidence which

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

a jury would have been justified in taking, and we are not precluded by anything which was decided in the case of Johnson against these same defendants (127 N. Y. Supp. 1126), growing out of the same accident, from determining the rights of the parties upon the record now before us. The plaintiff's intestate was a passenger upon an open trolley car operated by the Coney Island & Brooklyn Railroad Company on Coney Island avenue, borough of Brooklyn, on the 15th day of August, 1907. The car was running in a southerly direction, bound for Coney Island, and was obliged to cross the tracks of the Long Island Railroad at right angles, at grade, at a point known as Manhattan Crossing. The Long Island Railroad Company had maintained a flagman at this point for a period of at least 10 months prior to this accident, and it was his custom to wave a red flag across the tracks of the trolley railroad to warn those operating these cars of an approaching train. There were no gates at this crossing, and a high board fence, parallel with the tracks of the Long Island Railroad and close up to its tracks, obscured the view of those approaching by the trolley cars. On the day of the accident the trolley car approached the crossing slowly, and either came to a full stop or ran so slowly that the conductor of the trolley car ran ahead and looked both ways upon the right of way of the respondent and signaled the motorman to come on, whereupon the motion of the car was increased and it ran forward upon the tracks of the steam railroad, where it was run into by a dirt train backed down upon the crossing by an engine some distance away, and plaintiff's intestate received injuries which proved fatal.

[2] One witness testified that "I noticed when we got to the crossing the flagman was standing out there waving his flag. He had the white flag he was waving, and he had the red flag rolled up behind his back," so that it appeared from the evidence that, while the flagman testified that "in my hand I used a red flag to warn the trolley car," and, referring to the same red flag and his custom, "I stood between the two trolley tracks and held it across the trolley track," there was evidence that the flagman was not following his usual custom of using the red flag to warn trolley cars, but had the same folded up behind his back. Moreover, there was evidence from which the jury would have been justified in finding that this dirt train was backed down over a grade crossing in a populous city, where there was an obstructed view of the tracks, without the sounding of a whistle or bell, or taking any precautions to guard against an accident. It is true that there was testimony that there was a man standing on the rear car of the dirt train, but none of the witnesses saw him do anything to avert the accident, and there is no evidence that he was upon this car for the purpose of giving warning, or of stopping the train. If he was not there for that purpose, if he was a mere licensee upon this car for his own purposes, the fact of his presence is of no consequence whatever. If he was there for the purpose of guarding against accidents, then it was for the jury to determine whether he had discharged this duty, and, in either event, it seems to us there was a matter which, unexplained, called for a submission to the jury.

[3, 4] It should be remembered that the fact that the conductor and motorman of the trolley car may have been negligent, or that they may have erred in judgment, is not to be charged against the plaintiff's intestate. He was upon the trolley car, having nothing to do with its management or control, and, if the defendants were both negligent, the plaintiff is entitled to recover. It must be admitted that the plaintiff's testimony is in many respects of a negative character, but we are of the opinion that, undisputed, the jury might properly have found that the defendant did not exercise that reasonable degree of care which the circumstances of the case demanded.

[5] The claim of the respondent upon this appeal that the plaintiff's own witness testified to the sounding of a whistle on approaching this crossing is hardly borne out by the record. This witness was called by the plaintiff for a limited purpose, and the only suggestion in his testimony of the sounding of a whistle is that he says:

"I remember this day when the accident happened at this crossing; when the trolley car and the train had a collision. I was in the shanty when I first heard the train. I first heard a whistle."

He does not identify this whistle with the train that backed down over this crossing, or with any train. It may have been any kind of a whistle so far as the evidence discloses, and it may have been when the train was miles away, for he gives no information as to the length of time intervening between his hearing the whistle and the accident, or anything which would in any manner tend to show that the people operating this particular dirt train which worked the injury had taken any of the ordinary precautions which the situation obviously demanded.

In the Johnson Case, relied upon by the respondent, it appeared from the testimony of the defendant's engineer, called by the plaintiff, that the whistle was blown. There was no contradiction of this, and the flagman likewise testified to the same fact. Besides, upon the trial of the Johnson Case, the flagman testified that, when he heard the whistle blow for this approaching train, he took his red flag and went between the two trolley tracks on the side of the Long Island Railroad track from which the trolley car was approaching, and held the red flag across the trolley track and waved the white flag alongside of the Long Island track, and this differs very materially from the evidence as it appears in the present record.

The judgment appealed from should be reversed, and a new trial granted, costs to abide the event.

JENKS, P. J., and CARR, J., concur. THOMAS, J., concurs in result.

BURR, J. In this case I concur. I do not think that we can consider the testimony of the flagman to the effect that a whistle was blown or with respect to signals as to the approaching train, which he claims that he gave, for the reason that such testimony was not proper cross-examination of anything elicited from the witness by plaintiff on the direct examination. Such a course of examination

was in this case promptly objected to by counsel for the plaintiff, and in this respect the course of the trial differs from that in the Johnson Case. While it may have been in the discretion of the trial court to permit defendant at that time to introduce part of its testimony through the examination of said witness, in determining the motion for nonsuit the case must be considered as if no such evidence had been received up to the time when the motion was made.

