HARRY J. LEFFERT, as Assignee of CONEY AUTO-MAZE CORPORATION, Respondent, *v.* STEPHEN E. JACKMAN, Appellant, Impleaded with Another.

**Stock Corporation Law — consent of stockholders required to make legal and effectual mortgage on corporate property.**

The purpose of section 6 of the Stock Corporation Law (Cons. Laws, ch. 59) is to require the consent of the stockholders as therein provided in every case to make legal and effectual a mortgage on corporate property. This question may be raised by a general assignee of the corporation for the benefit of creditors. (*Vail* v. *Hamilton*, 85 N. Y. 453, followed; *Black* v. *Ellis*, 197 N. Y. 402, distinguished.)

*Felbel* v. *Jackman*, 183 App. Div. 938, affirmed

(Submitted October 14, 1919; decided December 2, 1919.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered September 9, 1918, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term in an action to have a chattel mortgage, purported to be given by the Coney Auto-Maze Corporation, adjudged illegal and void and

to have the same canceled of record because it had not been consented to by the holders of not less than two-thirds of the capital stock of the corporation as provided by section 6 of the Stock Corporation Law.

The Coney Auto-Maze Corporation is a domestic stock corporation. It became the lessee of certain property on Coney Island for a term commencing May 18, 1915, and ending January 1, 1920, and entered into possession thereof. Pursuant to the provisions of the lease there became due to the landlord on the 5th day of July, 1916, the sum of $4,250 as rent for the period between the 5th day of July, 1916, and the 2d day of January, 1917. It did not pay said rent and to avoid being dispossessed from the property and on the 17th day of August, 1916, the corporation and the defendant Payntar jointly and severally executed and delivered to the defendant Jackman, the landlord, their promissory note dated that day for said amount of $4,250 payable on October 1, 1916, with interest, and at the same time the corporation by its officers executed and delivered to said landlord a chattel mortgage on certain personal property owned by the corporation as security for the payment of the note. The mortgage was executed and delivered without the consent in writing or otherwise of two-thirds of the stockholders of said corporation and no assent by two-thirds of its stockholders has ever at any time been given thereto.

It appears without contradiction that at the time the mortgage was executed and delivered the statute was considered by the mortgagee and he was told by the defendant Payntar, the president of the corporation, that it would not be possible to obtain the required statutory consent thereto. The defendant Payntar, on signing said note jointly with the corporation, personally gave to the mortgagee other collateral as security for the payment of the note. Counsel acting for the landlord and mortgagee, at the time the mortgage was given,

testified in substance that he took the corporate mortgage because he was trying to get everything to secure the note that he could obtain. Neither the note nor the chattel mortgage has been paid.

On September 27, 1916, the corporation duly made, executed and delivered to Frank J. Felbel a general assignment of all its property for the benefit of its creditors. The plaintiff, Harry J. Leffert, has since been duly substituted as such assignee in the place of said Felbel. This action was brought by the general assignee to set aside said chattel mortgage as illegal and void and to have the same canceled of record. An answer was duly interposed by the mortgagee. The issues were tried at the Kings Special Term and judgment was rendered in favor of the plaintiff, from which judgment an appeal was taken to the Appellate Division, where it was unanimously affirmed. (*Felbel* v. *Jackman*, 183 App. Div. 938.)

*Alexander Van Wagoner* for appellant. The objection that the chattel mortgage in question is invalid by reason of the non-compliance with the provisions of section 6 of article 1 of chapter 59 of the Consolidated Laws is not available to an assignee for the benefit of creditors. (*Paulding* v. *Chrome Steel Co.*, 94 N. Y. 334; *Market & Fulton Bank* v. *Jones*, 7 Misc. Rep. 207; 90 Hun, 605; *Sugar Co.* v. *Whitin*, 69 N. Y. 328; *Welch* v. *Bank*, 122 N. Y. 177; *Beebe* v. *Power Co.*, 3 App. Div. 334; *Black* v. *Ellis*, 129 App. Div. 140; 197 N. Y. 402; *Bank* v. *Averell*, 96 N. Y. 467; *Quee Drug Co.* v. *Plaut*, 51 App. Div. 607; *London Realty Co.* v. *Coleman Stable Co.*, 140 App. Div. 495; *Vail* v. *Hamilton*, 85 N. Y. 453.)

*Robert E. Samuels* for respondent. The mortgage being invalid because of the lack of the statutory consent of stockholders may be so declared at the suit of the mortgagor's assignee for the benefit of creditors. (*Vail*

v. *Hamilton,* 85 N. Y. 453; *Lord* v. *Yonkers Fuel Gas Co.,*
99 N. Y. 548; *London Realty Co.* v. *Coleman Stable Co.,*
140 App. Div. 495; *Quee Drug Co.* v. *Plaut,* 51 App.
Div. 607; *Minnick* v. *Troy,* 83 N. Y. 516; *Tobias* v.
*Rogers,* 13 N. Y. 69; *Post* v. *Davis Co.,* 219 Fed. Rep. 171;
*Clover* v. *Ehrlich,* 62 Misc. Rep. 245; *Brinckerhoff* v.
*Bostwick,* 88 N. Y. 52; *Greaves* v. *Gouge,* 69 N. Y. 154.)
The plaintiff is not bound to restore or pay, as a condition
of maintaining this action, the value of the benefits
received from the mortgagee. (*Bissell* v. *M. S. R. R.
Co.,* 22 N. Y. 258; *R. S. Bank* v. *Averell,* 96 N. Y. 467;
*Pumpelly* v. *Phelps,* 40 N. Y. 60; *Vail* v. *Hamilton,* 85
N. Y. 453.)

CHASE, J. Section 6 of the Stock Corporation Law
(Chapter 59 of the Consolidated Laws) provides that a
stock corporation shall have power to borrow money
and contract debts when necessary for the transaction
of its business, or for the exercise of its corporate rights,
privileges or franchises or. for any other lawful purpose
of its incorporation, " and it may mortgage its property
and franchises to secure the payment of such obligations,
or of any debt contracted for said purposes. Every such
mortgage, except purchase-money mortgages and mort-
gages authorized by contracts made prior to May first,
eighteen hundred and ninety-one, shall be consented
to by the holders of not less than two-thirds of the
capital stock of the corporation, which consent shall be
given either in writing or by vote at a special meeting
of the stockholders called for that purpose, upon the
same notice as that required for the annual meetings of
the corporation; and a certificate under the seal of the
corporation that such consent was given by the stock-
holders in writing, or that it was given by vote at a
meeting as aforesaid, shall be subscribed and acknowledged
by the president or a vice-president and by the secretary
or an assistant secretary, of the corporation, and shall be

filed and recorded in the office of the clerk or register of the county wherein the corporation has its principal place of business.   *   *   * "

The question whether the purpose of the statute is simply to protect the stockholders from careless, improvident or corrupt acts of the officers of a corporation or is intended to require the consent of the stockholders as provided in the statute in every case to make legal and effectual a mortgage on corporate property, has been a subject for consideration in this, and other states where similar statutes exist, and the conclusions reached are not uniform. In this state, however, the answer to the question was unmistakably given by this court in 1881 long before the enactment by the legislature of the Stock Corporation Law of 1890 and, of course, the amendments thereto and revisions and consolidations thereof since that time.

We refer to the decision in *Vail* v. *Hamilton* (85 N. Y. 453). In that case it appears that the Secor Manufacturing Company had a capital stock consisting of five thousand shares, all of which had been issued. In March, 1874, nine hundred and forty shares of the stock were transferred to and became the property of the company. In July five hundred of the shares so held by it were transferred on the books of the corporation to one C. for the purpose of securing an indebtedness of the corporation and a certificate therefor was delivered to him. On the 1st of October the company executed to defendants as trustees a mortgage upon its property to secure $100,000 of its bonds. At the time of the execution of the mortgage a written assent to it was signed by stockholders owning two thousand seven hundred and sixty-four shares of the stock and in addition a consent was signed by the company by its secretary and president claiming therein to be a stockholder to the amount of nine hundred and forty shares. C. did not know of nor assent to the mortgage. The company became insolvent in 1877

and the plaintiff was appointed its receiver and brought
the action to set aside the mortgage upon the ground
that the necessary assent of stockholders thereto had not
been given. The court say: " But while a certain
limited number of the stockholders, to be called trustees,
were empowered in that character to manage this
property and the stock and concerns of the company,·
neither in a corporate capacity, nor through its trustees,
was it permitted to mortgage the same without first
obtaining and filing ' the written assent of the stock-
holders owning at least two-thirds of the capital stock
of such ' company. (Laws of 1848, chap. 40, §§ 2, 3;
Laws of 1864, chap. 517; Laws of 1871, chap. 481.)
It is noticeable that there is thus called into action, the
corporation as an artificial entity, the body of the trustees
as its agent, and lastly, the constituent members of the
corporation or the several individuals composing it. To
each of these a duty is assigned, and to make valid
the transaction now before us, it is plain that something
more than corporate action was required. The cor-
poration might become a party to the mortgage, and
the trustees direct its officers to execute it; but there must
still be the assent of the stockholder. The will of the
whole body, expressed by vote or resolution, cannot take
its place." (p. 456.)

The court further held that the assent of the corporation
claiming as an owner of nine hundred and forty shares is
simply the assent of the corporation and should not be
counted toward the assent required by the statute. The
court further, in considering the particular shares trans-
ferred on the books of the corporation to C., say: " Includ-
ing these shares as part of the stock to be represented,
the assent required by statute was not given and the
mortgage is of no validity. It was, however, an apparent
lien upon the property embraced in it; and we concur with
the General Term in the conclusion that the action was
well brought by the receiver to remove it." (p. 459.)

The judgments of the lower courts setting aside the mortgage were affirmed.

In *Rochester Savings Bank* v. *Averell* (96 N. Y. 467), which was an action brought to foreclose a corporate mortgage where the consent of two-thirds of the stockholders was not obtained at the time of the execution of the mortgage, the court say: "But no assent of the stockholders having been obtained, it was invalid and created no present lien upon the property. (*Vail, Rec'r.,* v. *Hamilton,* 85 N. Y. 453.) In the case cited, this court affirmed a judgment setting aside at the instance of a receiver, a mortgage executed by a corporation organized under the act of 1848, on the ground that the assent of the requisite number of stockholders had not been obtained. The case is an authority for the proposition that the assent of stockholders is an indispensable condition to the creation of a valid mortgage under the act of 1864." (p. 472.)

In that case (*Rochester Savings Bank* v. *Averell*) the assent of stockholders was obtained before there were any intervening rights and the court held that the mortgage became valid as of the time when the assent was given. To the same general effect is the decision in *Welch* v. *Importers & T. N. Bank* (122 N. Y. 177) and *Martin* v. *Niagara F. P. Mfg. Co.* (122 N. Y. 165).

In *Lord* v. *Yonkers Fuel Gas Co.* (99 N. Y. 547) the plaintiff sought to foreclose a corporate mortgage on real and personal property and also the rights, privileges and franchises described in the mortgage. Judgment of foreclosure and sale was entered from which an appeal was taken. It appears that the consent of two-thirds of the stockholders of the corporation to the execution of the mortgage covered only the real and personal property of the company and did not mention its franchises, privileges and rights. The court say: "This omission is, of itself, sufficient ground for holding the mortgage inoperative as to those rights. The judgment

appealed from authorizes the sale of the real and personal property, and also of all the rights, privileges, and franchises described in the mortgage.    In so far as it authorizes a sale of the corporate franchises of the company, the judgment should be reversed."    (p. 557.)

The conclusion reached in the decision of this court in *Vail* v. *Hamilton* (*supra*) was approved, reasserted or expressly followed in *Astor* v. *Westchester Gas Light Co.* (33 Hun, 333); *Farmers Loan & Trust Co.* v. *Baker* (20 Misc. Rep. 387); *Matter of Wendler Machine Co.* (2 App. Div. 16); *Beebe* v. *Richmond L., H. & P. Co.* (13 Misc. Rep. 737, 742); *Quee Drug Co.* v. *Plaut* (51 App. Div. 607); *London Realty Co.* v. *Coleman Stable Co.* (140 App. Div. 495); *Matter of Post & Davis Co.* (219 Fed. Rep. 171); *Matter of Progressive Wall Paper Corporation* (230 Fed. Rep. 171); *Karasik* v. *Peoples Trust Co.* (252 Fed. Rep. 324).

The decisions of this court relied upon by the appellant do not sustain his contention.  In *Greenpoint Sugar Company* v. *Whitin* (69 N. Y. 328, 333) the court in the discussion of the question then before it say that its decision is made " Without considering the question whether any but stockholders may interpose the objection to the authority exercised in this case."

In *Paulding* v. *Chrome Steel Co.* (94 N. Y. 334, 341) the court, referring in substance to the question whether the assent required by the statute to the giving of a mortgage was simply for the benefit and protection of stockholders against improvident or corrupt acts of the officers of the corporation, or because the legislature regarded the mortgaging of corporate property without such assent as improper *per se*, say: " The question, however, does not arise here, for neither the policy of the act nor its beneficent action can be invoked for the agreement was in fact made and the mortgage authorized by all the stockholders."

In *Black* v. *Ellis* (197 N. Y. 402) a corporation had

acquired title to chattels covered by a purchase-money mortgage. Its acquisition of title was subject to the lien of said chattel mortgage, and to a covenant to renew it in every year in proper form. The court held that the obligation to renew was a part of the purchase price of the chattels and that the statute requiring the consent of stockholders to a corporation giving a mortgage on its property did not apply to the renewal mortgage under consideration. The court say: " The statute manifestly applies to creating a new encumbrance on corporate property, not to keeping alive one existing on property acquired subject to mortgage and under agreement to continue as a valid and subsisting lien." (p. 411.)

As the question whether a corporate mortgage was executed with the consent of stockholders as required by the statute can be raised by the corporation and a receiver thereof, it is manifest that it can be raised by a general assignee for the benefit of all the creditors.

The judgment should be affirmed, with costs.

HISCOCK, Ch. J., COLLIN, CARDOZO, POUND, CRANE and ANDREWS, JJ., concur.

Judgment affirmed.